Thompson Becker & Bothwell, LLC
10 Melrose Ave.
Woodcrest Pavilion, Ste. 400
Cherry Hill, New Jersey 08003
Phone (856) 616-8886
Attorneys for Plaintiffs
BY:    Paul F. Jenkins (PJ-0752)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAZY HORSE LICENSING, INC. f/k/a CRAZY HORSE CONSULTING, INC., 1474 St. Clair Avenue, Cleveland, Ohio 44114-2002, | Civil Action No. **(JURY DEMANDED)** |
| Plaintiff, | |
| v. | |
| PLEASANTVILLE MEADOWS, INC., d/b/a CRAZY HORSE CABARET c/o Statutory Agent, STEVE PAIK, 201 E. Delilah Road, Atlantic City, New Jersey 08232, | |
| and | |
| EUN TAE KIM, 1705A Rachael Street, Philadelphia, Pennsylvania 19115, | |
| and | |
| STEVE PAIK, 2176 Jefferson Lane, Huntingdon Valley, Pennsylvania 19006, | |
| and | |
| JOHN DOE CORPORATION(S), Name(s) and address(es) unknown, | |
| and | |

|                                                      |   |
|------------------------------------------------------|---|
| JOHN or JANE DOE(S),                                 | ) |
| Name(s) and address(es) unknown,                     | ) |
|                                                      | ) |
| Defendants.                                          | ) |

# COMPLAINT
## (WITH DEMAND FOR JURY TRIAL)

Plaintiff, Crazy Horse Licensing, Inc. f/k/a Crazy Horse Consulting, Inc. ("CHL"), for its Complaint against Defendants, Pleasantville Meadows, Inc., Eun Tae Kim ("Kim"), Steve Paik ("Paik"), John Doe Corporation(s), and John or Jane Doe(s), states and avers as follows:

## PARTIES

1. CHL is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 1474 St. Clair Avenue, Cleveland, Ohio.

2. Defendant, Pleasantville Meadows, Inc. ("PMI"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 201 E. Delilah Road, Atlantic City, New Jersey, 08232, that, upon information and belief, operates a gentlemen's club under the name "Crazy Horse Cabaret" at the same address.

3. Eun Tae Kim ("Kim") is an individual who resides in Philadelphia, Pennsylvania and is the President of PMI and, upon information and belief, is personally involved in and oversees the operations of PMI and its gentlemen's club "Crazy Horse Cabaret".

4. Steve Paik ("Paik") is an individual who resides in Huntingdon Valley, Pennsylvania and is the Secretary of PMI and, upon information and belief, is personally involved in and oversees the operations of PMI and its gentlemen's club "Crazy Horse Cabaret".

5. Upon information and belief, John Doe Corporation(s) and/or John or Jane Doe(s), whose name(s) and address(es) cannot be ascertained at this time, is/are parties that

2

was/were or is/are involved in the operations of PMI and its gentlemen's club "Crazy Horse Cabaret".

## JURISDICTION

6. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), the New Jersey Statutes (Annotated) §§ 56:3-13 *et seq.* and §§ 56:4-1 *et seq.*, and the New Jersey common law.

7. This Court has jurisdiction over this matter based upon 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a). Jurisdiction over the claims brought under the statutory and common law of the State of New Jersey is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

## FACTS
### PLAINTIFF'S DEVELOPMENT OF THE CRAZY HORSE BRAND

8. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

9. Non-party Frank Spencer ("Spencer"), individually and through several closely held companies that he has and does own and control, has continuously used the CRAZY HORSE mark and a HORSEHEAD graphic mark in connection with adult entertainment and related services since 1978.

10. Throughout his more than 37 years in business, Spencer has expended substantial time, money and effort to establish the CRAZY HORSE® brand, as well as its reputation for high quality and goodwill in its services, particularly premier adult entertainment.

11. CHL, a licensing entity owned and controlled by Spencer, licenses a number of CRAZY HORSE® marks as a package to gentlemen's clubs wishing to capitalize upon the CRAZY HORSE® marks and name.

3

12. CHL is the owner by assignment of incontestable U.S. Registration No. 3,044,028, for the mark CRAZY HORSE® for use in entertainment services, namely exotic dance performances, in Class 41. (*See* Ex. A).

13. CHL is also the owner by assignment of incontestable U.S. Registration No. 2,069,552 for the CRAZY HORSE design mark for use in adult entertainment in the nature of exotic female performers in Class 41, and for restaurant, nightclub, and tavern services in Class 42 (the "HORSE HEAD mark") (*See* Ex. B):



14. CHL also owns U.S. Registration No. 4,549,588 for the mark CRAZY HORSE for online adult entertainment services, namely providing a website featuring pictures and information in the field of exotic dancing, and featuring articles and stories dealing with adult themes, adult entertainment services, namely exotic dancing performances in Class 41. (*See* Ex. C).

15. Moreover, Spencer has used and operated the internet domain name "crazyhorse.com" since at least 1995, which Spencer has used continuously to promote his CRAZY HORSE® brand throughout the United States and, indeed, all over the world.

16. CHL is also the owner by assignment of U.S. Registration No. 4,887,447 for the mark CRAZY HORSE® for use in restaurant, tavern, and cocktail lounge services. (*See* Ex. D).

4

17. Spencer and CHL have aggressively marketed and been actively engaged in the business of licensing the CRAZY HORSE® name to clubs that are able to satisfy the rigorous application process.

18. CHL licenses the use of its CRAZY HORSE® marks to three CRAZY HORSE® gentlemen's clubs in Ohio, which Spencer operates through various closely-held companies that he owns and controls: CRAZY HORSE® CLEVELAND, in Cleveland, Ohio, established in 1978 and that has continuously used the CRAZY HORSE mark and HORSEHEAD graphic mark; CRAZY HORSE® AIRPORT, in Brook Park, Ohio; and CRAZY HORSE® MEN'S CLUB in Bedford Heights, Ohio.

19. CHL also licenses the use of its CRAZY HORSE® marks to gentlemen's clubs in: Charlotte, North Carolina; Hickory, North Carolina; and Rock Hill, South Carolina.

20. CHL's licensees and online businesses operate under or in conjunction with the famous business name and the foregoing CRAZY HORSE® marks and the HORSE HEAD graphic mark (collectively "the Marks"). The Marks appear in and around business premises, in various marketing literature, as well as on websites for the licensed locations and operations.

21. Spencer and CHL are actively marketing the Marks for license throughout the United States, with particular emphasis on the East and West coasts, including in Pennsylvania, New York and New Jersey.

PLAINTIFF'S POLICING OF THE MARKS AND EXPANSION OF ITS BRAND

22. Since acquiring the federal registration of the CRAZY HORSE® marks, Spencer and CHL have actively policed them.

23. Prior to CHL becoming the owner of the CRAZY HORSE® registration, Spencer, with the assistance of counsel, filed a Notice of Opposition to the attempted registration of the Crazy Horse Too Gentlemen's Club mark, asserting his senior rights to the mark.

24. Judgment was entered against the applicant on August 3, 2010, and registration was therefore denied.

25. In 2011, CHL and Spencer (who at the time personally owned some of the marks in question) filed suit in the Southern District of New York against JOAL Restaurant Corp., a New York corporation that had been operating clubs in New York and Connecticut under the CRAZY HORSE® name. (*Crazy Horse Consulting, Inc. et al. v. JOAL Restaurant Corporation*, S.D.N.Y. Docket No. 1:11-cv-02350 (PGG).)

26. On August 24, 2011, the Court entered a permanent injunction against JOAL, forcing it to change the names of its clubs.

27. Spencer and CHC also filed and pursued claims against Russel Road Food and Beverage, LLC, a Nevada Limited Liability Corporation that operated a club in Las Vegas under the name CRAZY HORSE III. (*Russel Road Food and Beverage, LLC v. Frank Spencer, et al*, Dist. Nevada Case No. 2:12-cv-1514-LRH-GWF.)

INTENTIONAL INFRINGEMENT BY DEFENDANTS

28. Upon information and belief, PMI, Kim and Paik offer, promote, market, and advertise various forms of exotic dance and adult entertainment under the designation "CRAZY HORSE CABARET" and use a website with the domain name www.thecrazyhorsecabaret.com to promote this gentlemen's club with pictures and information about exotic dancing and adult entertainment services. (*See* Ex. E).

29. When CHL and Spencer learned of the unauthorized and unlicensed use of the CRAZY HORSE designations in connection with Defendants' "Crazy Horse Cabaret", they,

6

through counsel, immediately corresponded with Defendants to inform it/them of CHL's ownership and use of the Marks, and to demand that it/they cease and desist from any further use of the infringing marks without first acquiring a license.

30. Although delivery of the cease and desist letter was confirmed by the commercial carrier delivering the letter, Defendants have failed and refused to respond to CHL or its counsel, and continue to use the infringing marks without a license of the Marks.

31. Upon information and belief, Kim and Paik are personally and actively involved in the offering, promoting, marketing and advertising of Crazy Horse Cabaret, and controlled and condoned the decisions of PMI to knowingly and intentionally infringe upon the Marks.

32. Given the circumstances, it is highly likely that consumers will be confused as to the source and sponsorship of the services offered by Defendants under their use of the infringing marks.

33. Upon information and belief, Defendants' acted with the intent to cause confusion and mistake and to deceive, for at least the reason that Defendants continue to use infringing marks deceptively similar to the Marks in connection with its services, even after learning of CHL's ownership of the Marks.

34. Unless Defendants' acts of infringement and unfair competition are immediately restrained and enjoined, CHL will suffer irreparable injury in that Defendants' actions will: (a) lessen and dilute the value of the Marks; (b) create confusion in the marketplace as to the duly authorized source of such services and/or merchandise; and (c) deprive CHL of its just revenues based upon its legal exploitation of such rights.

35. It is impossible to ascertain the amount of compensation which could afford CHL adequate relief for such threatened and continuing acts, and a multiplicity of judicial proceedings

would be required. As a result, the remedies at law are not adequate to compensate CHL for injuries suffered and threatened.

## COUNT I
### FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT UNDER THE LANHAM ACT - 15 U.S.C. § 1114

36. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

37. CHL is the trademark owner of exclusive rights under United States trademark laws concerning the Marks.

38. Spencer and CHL have used the Marks in commerce in connection with their products and services continuously since 1978.

39. Defendants had both actual and constructive knowledge of the ownership of and the rights to federally registered CRAZY HORSE® marks owned by CHL prior to Defendants use of the infringing marks.

40. Defendants' use in commerce of the "Crazy Horse Cabaret" marks and/or marks confusingly similar to the CRAZY HORSE® marks for their services constitutes a reproduction, copying, counterfeiting, and colorable imitation of CHL's trademarks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers as to the source or origin of the relevant services.

41. Purchasers and potential purchasers of Defendants' goods and/or services are likely to believe that the goods and services advertised and offered for sale by Defendants are authorized by or sponsored by CHL, or that the purchasers and potential purchasers are engaging with CHL for its services, when in fact they are not.

42. Defendants adopted and continued to use infringing marks in commerce, and marks confusingly similar thereto, with full knowledge of CHL's superior rights, and with full knowledge that their use of the infringing marks was intended to cause confusion, mistake and/or deception.

43. Defendants offer their identical goods and services under the infringing marks in the same channels of trade and in the same class of customers (indeed, the same customers) as those in which CHL's legitimate goods and services are offered.

44. Such confusion will inevitably result in loss of control over CHL's reputation and public image and loss of sales, as any dissatisfaction with Defendants' goods and/or services will adversely reflect upon and seriously injure the valuable goodwill and reputation that Spencer and CHL have established for their services under the Marks.

45. The use of CHL's name and the infringing marks by Defendants in connection with their gentlemen's clubs is likely to cause confusion, mistake or deception as to the affiliation, connection or association of the adult entertainment services with CHL, and constitute counterfeiting and infringement in violation of 15 U.S.C. § 1114.

46. Defendants' actions constitute knowing, deliberate, and willful infringement of CHL's federally registered marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

47. As a result of Defendants' infringement and the lack of control over the use of the Marks, CHL has suffered and will continue to suffer substantial damages, as well as the continuing loss of its established goodwill and reputation in the Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Spencer and CHC have no adequate remedy at law.

9

48. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT II
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT - 15 U.S.C. § 1125(a)

49. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

50. Defendants have deliberately and willfully attempted to trade on the longstanding and hard-earned goodwill in the CRAZY HORSE® name, the Marks, and the reputation established by Spencer and CHL in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of adult entertainment services offered by Defendants, and to pass off their products and services in commerce as those of Spencer and CHL.

51. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive CHL of the ability to control the consumer perception of its products and services offered under the Marks, wrongfully placing the valuable reputation and goodwill of Spencer and CHL in the hands of Defendants.

52. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their "Crazy Horse Cabaret" with Spencer and CHL and the Marks, and as to the origin, sponsorship or approval of Defendants' products and services, in violation of 15 U.S.C. § 1125(a).

53. Defendants had direct and full knowledge of Spencer and CHL's prior use of and rights in the Marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

54. As a result of Defendants' conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Spencer and CHL in the Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which CHL has no adequate remedy at law.

55. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT III
## FEDERAL DILUTION BY TARNISHMENT UNDER
## THE LANHAM ACT - 15 U.S.C. § 1125(c)

56. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

57. The Marks – both in word and logo form – are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment.

58. Defendants commenced use of the CRAZY HORSE name and marks in commerce after the Marks had become famous and distinctive.

59. By using the Marks in connection with their adult entertainment services, in which consumers are deceived as to the origin of those services, Defendants have injured and will continue to injure the business reputation of Spencer and CHL, have tarnished and will continue to tarnish the distinctive quality of the Marks, and have lessened the capacity of the Marks to identify and distinguish the goods and services of CHL in violation of 15 U.S.C. § 1125(c).

60. As a result of the tarnishment of the Marks by Defendants, CHL have suffered and will continue to suffer substantial damages, as well as the continuing loss of the goodwill and reputation established by Spencer and CHL in the Marks. The continuing loss of goodwill

cannot be properly calculated and thus constitutes irreparable harm and an injury for which CHL has no adequate remedy at law.

61. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT IV
## CYBERSQUATTING UNDER
## THE LANHAM ACT – 15 U.S.C. § 1125(d)

62. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

63. The Marks are distinctive as defined by 15 U.S.C. § 1125.

64. Defendants' domain name for its website is substantially identical to and indistinguishable from, the Marks and, therefore, Defendants' domain name www.thecrazyhorsecabaret.com (the "Domain Name") is confusingly similar to the Marks under 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

65. Defendants' registration and use of the Domain Name violates the Lanham Act's Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

66. Defendants' actions were and are conducted in bad faith and designed to profit from the use of the Marks.

67. Defendants have no rights or legitimate interest in the Domain Name, and Defendants have no good faith connection with the Domain Name, as Defendants' name itself was adopted in bad faith.

68. Defendants have and intended to improperly divert internet customers from CHL's websites to Defendants' website at the Domain Name.

69. Defendants actions harm the goodwill of CHL, tarnish CHL's reputation and the Marks, and creates a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of Defendants' website by CHL.

70. As a result of Defendants' conduct, CHL has suffered and will continue to suffer substantial damages, as well as the continuing loss of the goodwill and reputation established by Spencer and CHL in the Marks. The continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which CHL has no adequate remedy at law.

71. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT V
**TRAFFICKING IN COUNTERFEIT MARKS UNDER NEW JERSEY LAW – N.J.S.A. § 56:3-13.16, § 56:3-13.20 AND NEW JERSEY COMMON LAW**

72. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

73. As described above, Defendants have used, without CHL's consent, reproductions, counterfeits, copies, and colorable imitations of the Marks in connection with the sale, offering for sale, and advertising of goods and services in a manner that is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

74. Moreover, as described above, Defendants have reproduced, counterfeited, copied and colorably imitated the Marks and applied the reproductions, counterfeits, copies and colorable imitations to labels, signs, prints and advertisements intended to be used upon or in connection with the sale or other distribution of goods or services.

13

75. Defendants have committed these acts with knowledge, and have used the Marks with the intent to cause confusion or mistake or to deceive.

76. As a result of Defendants conduct, CHL has suffered and will continue to suffer substantial damages, as well as the continuing loss of the goodwill and reputation established by Spencer and CHL in the Marks. The continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which CHL has no adequate remedy at law.

77. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT VI
### UNFAIR TRADE PRACTICES UNDER NEW JERSEY LAW – N.J.S.A. § 56:4-1 *et seq.* AND NEW JERSEY COMMON LAW

78. CHL incorporates the foregoing paragraphs of the Complaint as if fully rewritten and restated herein.

79. CHL has a protected right in the Marks.

80. By conducting business under the designation CRAZY HORSE, Defendants are passing off their services as those of CHL, and are thereby trading deceptively both on Spencer and CHL's long-standing and hard-earned goodwill in the Marks, and on the reputation Spencer and CHL have established in connection with their products and services.

81. Defendants' actions are likely to cause, and/or has caused confusion as to the origin and sponsorship of Defendants' goods and services to customers that are exercising reasonable care, in violation of New Jersey law.

82. This deceptive and unauthorized conduct has deprived and will continue to deprive CHL of the ability to control the consumer perception of the products and services

offered under the Marks, wrongfully placing the valuable reputation and goodwill of CHL in the hands of Defendants.

83. Defendants have willfully engaged in the trade practices described above, knowing them to be deceptive.

84. As a result of Defendants' aforesaid conduct, CHL has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Spencer and CHL in the Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Spencer and CHC has no adequate remedy at law.

85. CHL will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

**PRAYER FOR RELIEF**

WHEREFORE, CHL respectfully prays that the Court grant the following relief:

A. Entry of an order (on a preliminary and permanent basis) requiring that Defendants, Defendants' respective officers, agents, servants, employees and/or all persons acting in concert or participation with Defendants be enjoined and restrained from:

(1) using the Marks or any colorable variation thereof;

(2) offering, providing, or advertising any service in association with the Marks, or any colorable variation thereof, as to which Defendants have not obtained a license to do so;

(3) manufacturing, importing distributing, selling, offering for sale, holding for sale, or advertising any products bearing the Marks, or any colorable variation thereof, as to which Defendants have not obtained a license to do so;

15

(4) representing that any service or good, distributed, sold, held for sale, or advertised by Defendants are sponsored or authored by CHL;

(5) applying the Marks or any reproduction, counterfeit, copy or colorable imitation thereof to labels, tags, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used or capable of being used in connection with the sale, offering for sale, distribution, or advertising of goods or services or in connection with which such use that is likely to cause confusion or to cause mistake or to deceive;

(6) making, having made for Defendants, selling, distributing, or disposing of in any manner any advertisements or promotional material, including, but not limited to, catalogs, letters, posters, or brochures using the Marks and any documents relating in any fashion to adult entertainment services or the manufacture, purchase, or sale or the source of any related infringing counterfeit merchandise;

(7) engaging in any unfair trade practices or unfair competition against CHL;

(8) aiding, abetting, encouraging, or inducing another to do any of the acts herein enjoined; and

(9) doing any act or thing calculated to or likely to cause confusion or mistake in the minds of members of the public or prospective customers of the products or services of CHL as to the source of the products or services offered.

B. Ordering Defendants to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging,

letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or their agents bearing the Marks, or any mark that is confusingly similar to or a colorable imitation of these marks;

      C.    Directing Defendants to provide an accounting of all gains, profits, and advantages they earned as a result of their unlawful conduct;

      D.    Ordering Defendants to pay a judgment in the amount of the actual damages sustained by CHL under 15 U.S.C. § 1117 and New Jersey law, as well as Defendants' profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial, and treble damages pursuant to New Jersey law;

      E.    Ordering Defendants to disgorge all of their profits earned due to their knowing infringement of the Marks;

      F.    Ordering Defendants to pay Plaintiffs' reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and New Jersey law;

      G.    Ordering Defendants to pay punitive damages for their willful, deliberate and malicious actions;

      H.    Ordering Defendants to assign all infringing domain names to CHL; and

      I.    Granting CHL such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 15th day of April, 2016.

                                              Respectfully Submitted,

                                              THOMPSON BECKER & BOTHWELL, LLC

                                              */s/ Paul F. Jenkins*

                                              _____
                                              PAUL F. JENKINS (PJ-0752)
                                              10 Melrose Ave., Ste. 400
                                              Cherry Hill, New Jersey 08003
                                              Phone  (856) 616-8886
                                              Fax     (856) 616-9118
                                              Email  pjenkins@tbblawfirm.com

                                              *Attorney for Plaintiff*

Of counsel:

JOHN P. SUSANY (OH# 0039472)
HAROLD M. SCHWARZ, III (OH# 0078072)
KATHLEEN A. HAHNER (OH# 0084113)
STARK & KNOLL CO., L.P.A.
3475 Ridgewood Road
Akron, Ohio 44333
Phone: (330) 572-1316
Fax:       (330) 572-1266
Email: jsusany@stark-knoll.com
         hschwarz@stark-knoll.com
         khahner@stark-knoll.com

## **JURY DEMAND**

    Plaintiff demands a trial by jury for any and all issues so triable.

                                              */s/ Paul F. Jenkins*

                                              _____
                                              *One of the Attorneys for Plaintiff*